IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| HEATHER KU<br>Plaintiff,<br><br>v.<br><br>FLOW COMPANIES OF GREENSBORO, LLC<br>D/B/A FLOW LAND ROVER GREENSBORO<br>1205 Bridford Pkwy<br>Greensboro, NC 27407<br><br>**Serve also:**<br>DONALD FLOW, REGISTERED AGENT<br>500 West 5th Street, Suite 1800<br>Winston-Salem, NC 27101<br><br>Defendant. | ) | **<u>COMPLAINT FOR DAMAGES AND REINSTATEMENT</u>**<br><br>**<u>JURY DEMAND ENDORSED HEREIN</u>** |

Plaintiff, Heather Ku, by and through undersigned counsel, as her Complaint against Defendant Flow Companies of Greensboro, ("Defendant" or "Flow"), states and avers the following:

## <u>PARTIES</u>

1. Heather Ku is an adult resident of the city of Greensboro, county of Guilford, state of North Carolina.

2. Defendant Flow Companies of Greensboro, LLC d/b/a Flow Land Rover Greensboro is a North Carolina limited liability company doing business in Guilford County, North Carolina that operates a place of business located at 1205 Bridford Pkwy, Greensboro NC 27410.

3. At all relevant times, Flow was at all times hereinafter mentioned an employer within the meaning of Title VII.

## JURISDICTION & VENUE

4. Flow hires citizens of the state of North Carolina, contracts with companies in North Carolina, and owns or rents property in North Carolina. As such, the exercise of personal jurisdiction over Flow comports with due process.

5. This cause of action arose from or relates to the contracts of Flow with North Carolina residents, thereby conferring specific jurisdiction over Flow.

6. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1343.

7. This Court possesses supplemental jurisdiction over Plaintiff's state-law claim pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the unlawful employment practices occurred within this District.

## ADMINISTRATIVE EXHAUSTION

9. Within 180 days of the conduct alleged below, Ku filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 435-2026-00026 against Flow operating at 1205 Bridford Pkwy, Greensboro NC 27410.

10. On or about July 1, 2026, the EEOC issued a Notice of Right to Sue letter to Ku regarding the Charges of Discrimination brought by Ku against Flow in EEOC Agency Charge No. 435-2026-00026.

11. Ku received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

12. Ku received the Notice of Right to Sue and has filed this action within ninety (90) days of receipt thereof.

13. Ku has properly exhausted her administrative remedies.

## FACTS

14. Ku is a former employee of Flow.

15. Ku is female.

16. Flow hired Ku as a Concierge.

17. Flow hired Ku on or about August 28, 2021.

18. Ku was qualified for the position and satisfactorily performed her job duties throughout her employment.

19. Ku was hired by Flow, and the General Manager is Michael Hilton.

20. Hilton is male.

21. At all relevant times, Michael Hilton was a General Manager at Flow and Ku's direct manager.

22. At all relevant times, Beth Gupton was Ku's coworker.

23. Gupton is female.

24. Ku was qualified for her position as a Concierge by her skills and experience.

25. Flow hired Ku because of Ku's qualifications.

26. Ku continued to be qualified for her position as a Concierge at all relevant times referenced herein by meeting Flow's legitimate business expectations for her performance.

27. Ku met Flow's legitimate business expectations for her performance by attending work on time, not missing unexcused days of work, and performing her assigned work with quality.

28. Ku was qualified for her position as a Concierge.

29. At all relevant times, Michael Orr was Head of Human Resources.

30. Orr is male.

31. As the Head of Human Resources, Orr had the authority to hire, fire, or discipline employees.

32. As the General Manager, Hilton has the authority to hire, fire, or discipline Ku.

33. Orr has a position of power over Ku.

34. Hilton has a position of power over Ku.

35. Orr has the authority to exercise power over Ku.

36. Hilton has the authority to exercise power over Ku.

37. Orr and Hilton, in fact, exercised that power over Ku by ignoring Ku's complaints.

38. Gupton, Ku's coworker, sexually harassed Ku. ("Gupton's Sexual Harassment")

39. Beginning in March 21, 2022, Gupton began directing unwelcome sexual conduct toward Ku.

40. Beginning in March 2022, Gupton started spreading rumors that were sexual in nature about Ku.

41. Gupton accused Ku of providing sexual favors to Hilton.

42. Gupton accused Ku of having an affair with Hilton.

43. Ku rejected Gupton's rumors.

44. Following the first incident of Gupton's Sexual Harassment, Ku expressed that Gupton's conduct was unwelcomed.

45. Despite Ku's rejection, Gupton's conduct continued.

46. Gupton's Sexual Harassment included making comments that Ku was going to do with manager what Gupton claimed Ku had done with her boss.

47. Gupton's Sexual Harassment included stating that "[she] didn't come in here looking like [she] wanted a boyfriend", directing the comment at Ku.

48. On or around April 20, 2024, Gupton's Sexual Harassment included calling Ku a "chicken head" and continually commented that Ku was providing sexual favors to Hilton.

49. Gupton's Sexual Harassment occurred in front of other coworkers.

50. After the first incident of Gupton's Sexual Harassment, Ku informed Gupton that Gupton's Sexual Harassment was unwelcomed.

51. Ku repeatedly informed Gupton that her conduct was unwelcome.

52. Ku repeatedly instructed Gupton to maintain a professional relationship.

53. Ku continued to inform Gupton that Gupton's Sexual Harassment was unwelcomed.

54. Gupton continued to perpetrate Gupton's Sexual Harassment against Ku over Ku's objections.

55. Gupton's Sexual Harassment occurred during the course and scope of Ku's employment.

56. Gupton's Sexual Harassment unreasonably interfered with Ku's work performance.

57. Gupton's Sexual Harassment created an intimidating, hostile, and offensive working environment.

58. Gupton's Sexual Harassment was severe.

59. Gupton's Sexual Harassment was pervasive.

60. A reasonable person in Ku's position would find Gupton's Sexual Harassment severe.

61. A reasonable person in Ku's position would find Gupton's Sexual Harassment pervasive.

62. Ku found Gupton's Sexual Harassment to be severe.

63. Ku found Gupton's Sexual Harassment to be pervasive.

64. Gupton's Sexual Harassment altered the terms and conditions of Ku's employment.

65. Despite Gupton's Sexual Harassment's interference with Ku's work environment, Ku continued to perform her job responsibilities in a way that met or exceeded Flow's legitimate business expectations.

66. Ku found the conduct hostile and abusive.

67. As a result of Gupton's Sexual Harassment, Ku was humiliated and embarrassed.

68. Around July 2025, Ku made a formal complaint to Flow's HR department. (Ku's Report of Discrimination)

69. Defendant thereby acquired actual knowledge of the harassment.

70. Around July 2025 Ku met with Orr to discuss Gupton's Sexual Harassment at another location for neutrality purposes.

71. During this meeting, Ku discussed Gupton's actions and comments.

72. During this meeting, Ku informed Orr that she was uncomfortable continuing to work with Gupton.

73. Flow failed to take meaningful corrective action after Ku's Report of Discrimination.

74. The harassment directed at Ku was based upon her sex and consisted of repeated sexually derogatory comments, sexual rumors, and accusations that Ku was receiving favorable treatment from male management because of an alleged sexual relationship.

75. Defendant's employees repeatedly insinuated that Ku obtained workplace benefits through sexual conduct with male supervisors and managers.

76. Defendant's employees repeatedly accused Ku of providing sexual favors to management and having an affair with her supervisor.

77. Defendant's employees referred to Ku using sexually derogatory terms and made comments implying that she engaged in sexual acts with male employees or managers.

78. The harassment was directed toward Ku because she is a woman and was based upon offensive gender stereotypes regarding women in the workplace.

79. Ku repeatedly complained about the sexually offensive conduct to management and Human Resources.

80. Through Ku's repeated complaints, Defendant acquired actual knowledge that Ku believed she was being subjected to unlawful sexual harassment and sex-based discrimination.

81. Despite receiving multiple complaints from Ku, Defendant failed to issue meaningful discipline, failed to prevent additional harassment, and failed to take prompt and effective remedial action.

82. Following Defendant's failure to take corrective action, the harassment continued and escalated.

83. Defendant's failure to stop the harassment communicated to employees that sexually offensive comments and gender-based ridicule directed at Ku would be tolerated.

84. Ku's complaints concerned conduct that she reasonably believed violated Title VII and North Carolina law.

85. Ku engaged in protected activity when she opposed, reported, and complained about sexual harassment and sex discrimination.

86. Defendant's decisionmakers were aware of Ku's complaints before the decision to terminate her employment.

87. On or around July 21, 2025, Orr terminated Ku alleging Flow was "cutting back."

88. As a result of this termination, Ku did not return to Flow.

89. Defendant's assertion that Plaintiff's position was eliminated due to cost-cutting measures was false and a pretext for unlawful sex discrimination and retaliation.

90. Prior to her complaints of discrimination, Ku had not been disciplined for performance issues, misconduct, attendance problems, or any other legitimate business reason that would justify termination.

91. Ku consistently performed her duties in a satisfactory manner and met Defendant's legitimate business expectations.

92. Within days of Ku's formal complaint to Human Resources, Defendant terminated her employment.

93. The close temporal proximity between Ku's protected complaints and her termination supports an inference of unlawful retaliation.

94. Ku had engaged in protected activity by:

a. Opposing sexual harassment; and

b. Reporting sexual harassment to Human Resources.

95. Defendant's purported reason that it was "cutting back" was false and a pretext for discrimination and retaliation.

96. Defendant's tolerance of ongoing sex-based harassment, coupled with Ku's termination shortly after complaining, gives rise to an inference that Ku's sex and opposition to discrimination were motivating factors in Defendant's treatment of Ku.

97. Defendant terminated Ku because she opposed unlawful harassment and discrimination.

98. Defendant intentionally discriminated against Ku because of her sex, retaliated against Ku for engaging in protected activity, and terminated Ku in violation of the public policy of the State of North Carolina.

99. As a direct and proximate result of Defendant's conduct, Ku suffered and continues to suffer loss of income, loss of benefits, emotional distress, humiliation, embarrassment, mental anguish, inconvenience, and other damages.

100. Defendant acted intentionally and with reckless disregard for Ku's federally protected rights.

101. Plaintiff remains willing and able to perform the essential functions of her former position, with or without reasonable accommodation, and seeks reinstatement.

**COUNT I-TITLE VII SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT**

102. Plaintiff restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

103. Plaintiff was subjected to unwelcome conduct because of her sex.

104. The conduct was severe or pervasive.

105. The conduct altered the terms and conditions of employment.

106. Defendant knew or should have known of the unlawful conduct affecting Plaintiff, yet failed to take appropriate corrective action to prevent, remedy, or eliminate the misconduct.

107. Defendant’s actions and omissions were undertaken with malice or reckless indifference to Plaintiff’s federally protected rights, thereby entitling Plaintiff to recover punitive damages.

108. As a direct and proximate result of Defendant's conduct, Ku suffered lost wages, lost benefits, emotional distress, humiliation, embarrassment, mental anguish, and other damages.

## COUNT II-TITLE VII SEX DISCRIMINATION

109. Plaintiff restates each and every prior paragraph of this Complaint; as if it were fully restated herein.

110. Plaintiff is a member of a protected class because she is female.

111. Throughout her employment, Plaintiff was subjected to sex-based harassment, sexually derogatory comments, sexual rumors, and gender-based stereotypes.

112. The harassment directed toward Plaintiff was because of her sex and was based upon offensive stereotypes regarding women and allegations that Plaintiff obtained workplace benefits through sexual conduct with male management.

113. Defendant knew or should have known of the discriminatory conduct but failed to take appropriate corrective action.

114. Plaintiff was qualified for her position and satisfactorily performed her job duties.

115. Defendant subjected Plaintiff to adverse employment actions, including the termination of her employment.

116. The circumstances surrounding Defendant's actions, including Defendant's tolerance of ongoing sex-based harassment and Plaintiff's termination immediately following her complaints, give rise to a reasonable inference of unlawful sex discrimination.

117. Plaintiff's sex was a motivating factor in Defendant's treatment of Plaintiff and in the decision to terminate her employment.

118. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, humiliation, embarrassment, mental anguish, and other damages.

119. Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages as allowed by law.

**COUNT III-TITLE VII RETALIATION**

120. Plaintiff restates each and every prior paragraph of this Complaint; as if it were fully restated herein.

121. Plaintiff engaged in protected activity by opposing sexual harassment.

122. Defendant knew Plaintiff engaged in protected activity.

123. Defendant disciplined and terminated Plaintiff because of her opposing sexual harassment.

124. Defendant knew or should have known of the unlawful conduct affecting Plaintiff, yet failed to take appropriate corrective action to prevent, remedy, or eliminate the misconduct.

125. Defendant's actions and omissions were undertaken with malice or reckless indifference to Plaintiff's federally protected rights, thereby entitling Plaintiff to recover punitive damages.

126. As a direct and proximate result of Defendant's conduct, Ku suffered lost wages, lost benefits, emotional distress, humiliation, embarrassment, mental anguish, and other damages.

**COUNT IV-WRONGFUL TERMINATION IN VIOLATION OF NORTH CAROLINA PUBLIC POLICY**

127. Plaintiff restates each and every prior paragraph of this Complaint; as if it were fully restated herein.

128. At all relevant times, the State of North Carolina has recognized a clear and well-established public policy prohibiting discrimination and harassment on the basis of sex in employment, as set forth in the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2.

129. This public policy further prohibits retaliation against employees who oppose, report, or complain about unlawful discriminatory practices in the workplace.

130. Plaintiff engaged in protected activity by repeatedly reporting and opposing workplace sexual harassment and sex-based discrimination occurring during her employment with Defendant.

131. Plaintiff complained to management and Human Resources regarding sexually harassing comments, sexually derogatory remarks, and other conduct that she reasonably believed violated federal and North Carolina law.

132. Plaintiff acted in good faith when she reported and opposed the unlawful conduct described herein.

133. Rather than take effective corrective action to stop the harassment, Defendant subjected Plaintiff to adverse treatment and ultimately terminated her employment.

134. Plaintiff's complaints regarding sexual harassment and sex discrimination were a substantial motivating factor in Defendant's decision to terminate her employment.

135. Defendant's stated reason for terminating Plaintiff was false, pretextual, and intended to conceal unlawful retaliation for Plaintiff's opposition to discriminatory and harassing conduct.

136. By terminating Plaintiff for reporting and opposing sexual harassment and sex discrimination, Defendant violated the public policy of the State of North Carolina as expressed in the North Carolina Equal Employment Practices Act and the common law of North Carolina.

137. Defendant knew or should have known of the unlawful conduct affecting Plaintiff, yet failed to take appropriate corrective action to prevent, remedy, or eliminate the misconduct.

138. Defendant's conduct was intentional, willful, malicious, and reckless, and was undertaken with conscious disregard of Plaintiff's rights.

139. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer lost wages, lost benefits, lost earning capacity, emotional distress, humiliation, mental anguish, inconvenience, and other compensatory damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Heather Ku respectfully requests that this Court enter judgment in her favor and against Defendant Flow Companies of Greensboro, LLC d/b/a Flow Land Rover Greensboro and grant the following relief:

A. Declare that Defendant's conduct violated Title VII of the Civil Rights Act of 1964 and the public policy of the State of North Carolina;

B. Issue preliminary and permanent injunctive relief prohibiting Defendant from engaging in further unlawful discrimination, retaliation, and harassment;

C. Order Defendant to reinstate Plaintiff to the position she would have held absent Defendant's unlawful conduct, or to a substantially equivalent position, with all seniority, benefits, privileges, and rights restored;

D. Order Defendant to expunge from Plaintiff's personnel file any disciplinary actions, write-ups, warnings, separations, or other records arising from the unlawful conduct alleged herein;

E. In the alternative to reinstatement, award Plaintiff front pay, future lost earnings, future lost employment benefits, and all other prospective economic losses resulting from Defendant's unlawful conduct;

F. Award Plaintiff back pay, lost wages, lost overtime, lost bonuses, lost commissions, lost employment benefits, lost retirement contributions, and all other economic damages suffered as a result of Defendant's conduct;

G. Award compensatory damages in an amount to be determined by the jury for emotional distress, humiliation, embarrassment, mental anguish, inconvenience, loss of enjoyment of life, and other non-economic injuries suffered as a result of Defendant's unlawful conduct;

H. Award punitive damages under Title VII and all other applicable law in an amount sufficient to punish Defendant for its willful, malicious, reckless, and callous disregard of Plaintiff's federally protected rights and to deter similar misconduct in the future;

I. Award damages for wrongful discharge in violation of North Carolina public policy, including all damages recoverable under North Carolina law;

J. Award prejudgment interest on all monetary damages to the fullest extent allowed by law;

K. Award post-judgment interest as provided by law until the judgment is fully satisfied;

L. Award Plaintiff her reasonable attorneys' fees, litigation expenses, expert witness fees where authorized, non-taxable costs, taxable costs, and all other expenses of this action;

M. Award such equitable relief as the Court deems necessary to make Plaintiff whole and eliminate the effects of Defendant's unlawful employment practices;

N. Award such additional legal, equitable, declaratory, and injunctive relief as the Court deems just and proper; and

O. Grant Plaintiff a trial by jury on all issues so triable.

This the 29h day of September, 2026

Respectfully submitted,

/s/ *M. Janelle Lyons, Esq.*
M. Janelle Lyons (35421)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
6135 Park South Drive, Suite 590
Charlotte, NC 28210
Phone: (980) 301-0755
Fax: (216) 291-5744
Email: janellelyons@spitzlawfirm.com

*Attorney For Plaintiff*

**JURY DEMAND**

Plaintiff Heather Ku demands a trial by jury by the maximum number of jurors permitted.

/s/ *M. Janelle Lyons*
M. Janelle Lyons (N.C. Bar No. 35421)